**GARY DARTEZ, Plaintiff in Pro Per**
20 E 16th Street, Unit #203
Antioch, CA 94509
Email: Gary.Dartez.Email@gmail.com

**TAMISHA LATIMORE, Plaintiff in Pro Per**
20 E 16th Street, Unit #203
Antioch, CA 94509
Email: Tamisha.Latimore@gmail.com

FILED

FEB 25 2026

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

AT ⑥

IFP
NP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA



CV26.01644

GARY DARTEZ, and
TAMISHA LATIMORE,

　　　　　Plaintiffs.

　　vs.

REDWOOD PROPERTY INVESTORS
III, LLC, a California Limited Liability
Company; CITY OF ANTIOCH, a
Municipal Corporation; and DOES 1
through 50, inclusive.

　　　　　Defendants.

Case No. _____   SK

**COMPLAINT FOR FEDERAL AND STATE
CIVIL RIGHTS VIOLATIONS, DISABILITY
DISCRIMINATION, RETALIATION, AND
RELATED TORT CLAIMS**

**CAUSES OF ACTION**

1. **Fair Housing Act – Disability Discrimination /
   Failure to Make Reasonable Accommodations**
   (42 U.S.C. § 3604(f)(1)–(3))
2. **Fair Housing Act – Retaliation / Interference**
   (42 U.S.C. § 3617)
3. **42 U.S.C. § 1983 – Deprivation of
   Constitutional Rights (Due Process and Equal
   Protection**
   (U.S. Const. amend. XIV)
4. **42 U.S.C. § 1983 – Municipal Liability
   (Monell Policy, Practice, or Custom)**
   (Monell v. Dep't of Soc. Servs., 436 U.S. 658)
5. **Americans with Disabilities Act (ADA) Title
   II – Denial of Meaningful Access / Failure to
   Reasonably Modify Policies**
   (42 U.S.C. § 12132; 28 C.F.R. § 35.130)
6. **California Public Records Act – Unlawful
   Withholding of Records**
   (Gov. Code §§ 7922.535, 7923.000, 7923.115)
7. **Unruh Civil Rights Act – Disability
   Discrimination**

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION,
RETALIATION, AND RELATED TORT CLAIMS

(Civ. Code §§ 51–52)

8. **Unfair Business Practices (Unfair Competition)**
   (Bus. & Prof. Code §§ 17200, 17203)

9. **Breach of Implied Warranty of Habitability (Negligence/Negligence Per Se) / Unlawful Rent Demands**
   (Civ. Code § 1714; Civ. Code §§ 1941.1, 1942, 1942.4; Health & Saf. Code § 17920.3)

10. **Conversion and Wrongful Deprivation of Tenant Property (Trespass to Chattels)**
    (Civ. Code §§ 1980–1991; Civ. Code § 3336; Civ. Code § 3281)

11. **Intentional Infliction of Emotional Distress (IIED)**
    (Civ. Code § 1708.4; Civ. Code § 3294)

12. **Invasion of Privacy / Quiet Enjoyment / Unlawful Entry / Intrusion**
    (Civ. Code §§ 1927, 1954; Civ. Code § 1708.8)

13. **Declaratory and Injunctive Relief**
    (28 U.S.C. §§ 2201–2202; Gov. Code §§ 7922.535, 7923.000, 7923.115; Gov. Code §§ 11135; 42 U.S.C. § 12132; 28 C.F.R. §§ 35.130, 35.160–35.164; Bus. & Prof. Code § 17203)

14. **Breach of Implied Warranty of Habitability; Unlawful Demand or Collection of Rent**
    (Civ. Code §§ 1941.1, 1942, 1942.4; Health & Saf. Code § 17920.3)

15. **Fraud and Concealment of Material Facts and Records**
    (Civ. Code § 1710(3); Civ. Code §§ 1962, 1950.5(g))

Hon. _____


**DEMAND FOR JURY TRIAL**

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

## I.   **INTRODUCTION**

1.   This civil-rights action arises from a documented and escalating course of conduct occurring between 2016 and November–December 2025 that resulted in the wrongful displacement, homelessness, and deprivation of property of two long-term residential tenants—one of whom is permanently disabled—through disability discrimination, retaliation, denial of fair process, and interference with protected housing rights, in violation of federal and California law.

2.   Plaintiff Dartez has resided at the subject residential property in Antioch, California continuously since approximately February 2016. Plaintiff Latimore, a permanently disabled woman whose disabilities substantially limit major life activities as defined by 42 U.S.C. § 12102(1)–(2), resided at the same property for approximately eighteen months prior to displacement, with Defendants' knowledge, acquiescence, and ongoing recognition of her residency.

3.   Beginning no later than 2018, Defendant Redwood Property Investors III, LLC ("Redwood"), through its agents and property management personnel, initiated a pattern of issuing false and coercive tenancy notices, including a 2018 3-day notice falsely alleging rent arrears when Plaintiff Dartez was actually current, followed by years of record concealment, escalating habitability failures, retaliation, and enforcement escalation.

4.   From at least 2023 through 2025, conditions at the property deteriorated substantially, including severe cockroach infestations, trash overflow, broken security gates, blocked fire lanes, repeated water shutoffs, unauthorized construction activity, and environmental hazards,

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

rendering the premises substandard within the meaning of Health & Safety Code § 17920.3 and violating Civil Code §§ 1941.1 and 1942.4.

5. In January 2023, Plaintiff Dartez formally requested copies of all lease agreements and tenancy records dating back to 2016. Redwood responded by asserting that no leases existed prior to 2023, despite the continuous tenancy since 2016, in violation of Civil Code §§ 1962 and 1950.5(g) and constituting fraudulent concealment under Civil Code § 1710(3).

6. Throughout 2024, Redwood repeatedly acknowledged pest problems by issuing treatment notices dated September 13, 2024, November 18–19, 2024, and December 26–31, 2024, yet infestations persisted inside Plaintiffs' unit. On or about October 1, 2024, water service to the property was shut off without adequate notice or mitigation, interfering with basic habitability needs, and disproportionately burdening the disabled Plaintiff.

7. In March 2025, conditions escalated further. Between March 8 and March 20, 2025, Plaintiffs experienced a surge in infestations, heater failures, repeated water shutoffs, and late-night construction activity.

8. On March 10, 2025 and again on March 24, 2025, Plaintiffs sent certified and written demands to Redwood seeking (a) remediation of uninhabitable conditions, (b) a full accounting of rent and charges, and (c) production of all leases and records. Redwood did not produce the requested records or cure the conditions.

9. By April 2025, the premises met statutory criteria for uninhabitable housing. Plaintiffs therefore lawfully withheld rent beginning April 2025 pursuant to Civil Code §§ 1942 and 1942.4. On April 7, 2025, Redwood responded by serving a 3-day notice to pay or quit, followed by an additional notice on May 6, 2025, despite ongoing statutory violations.

10. On April 10, 2025, multiple Redwood management staff conducted a mass

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

"inspection" of Plaintiffs' unit pursuant to a notice lacking clear identification or signature, followed by temporary pest treatment on April 16, 2025, which required Plaintiffs' displacement for several hours without resolving infestations.

11. On May 16, 2025, Plaintiffs initiated formal administrative proceedings by submitting a rent petition under Antioch Municipal Code Title 11, which the City of Antioch Rent Program accepted and date-stamped on May 21, 2025. On that same date, Redwood filed an unlawful detainer action in Contra Costa Superior Court alleging rent arrears during the pendency of the rent-petition process.

12. Unlawful detainer timeline: UD #1 was filed on May 21, 2025 and dismissed on July 17, 2025; UD #2 was filed on or about July 28, 2025 naming Plaintiff Latimore and demanding that she "cure or quit."

13. Four days after dismissal of UD #1, on July 21, 2025, Redwood served Plaintiffs with a 3-day notice to cure or quit that specifically targeted disabled Plaintiff Latimore as an "unauthorized occupant," demanding her removal within three days, notwithstanding her known disability and recognized occupancy.

14. During this same period, Plaintiffs sought enforcement and review through the City of Antioch Rent Program. Although Antioch Municipal Code § 11-3.06(C) requires issuance of a decision within 60 days of petition acceptance absent an agreed extension, the City did not hold the hearing until August 14, 2025 and did not issue its written decision until August 28, 2025— approximately 99 days after acceptance.

15. At the August 14, 2025 hearing, City officials excluded or refused to meaningfully incorporate Plaintiffs' disability documentation, habitability evidence, and portions of the petition itself. The August 28, 2025 decision was served with an unsigned proof of service,

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

5 OF 62

contained a misspelling of Plaintiff Latimore's name, and failed to address anti-retaliation protections or accommodation requests, denying Plaintiffs' meaningful participation and review.

16. Plaintiffs requested disability-related accommodations to participate meaningfully in the Rent Program process, including (1) acceptance and consideration of Plaintiff Latimore's disability documentation and related submissions, and (2) accessible/effective communication and process accommodations to ensure full participation. The City denied or effectively denied these accommodations by excluding or refusing to incorporate disability documentation and related evidence, failing to implement effective communication/process accommodations required by 28 C.F.R. §§ 35.160–35.164, and issuing a defective decision while withholding the administrative record and recording(s) of the hearing. As a result, Plaintiffs were deprived of meaningful participation and outcome-affecting review in the Rent Program proceeding.

17. Plaintiffs submitted Plaintiff Latimore's medical disability documentation and written accommodation requests to the City in advance of and/or in connection with the Rent Program proceeding, including requests that the City accept and consider the disability documentation and implement effective communication and process modifications; the City ignored those written requests and proceeded to hearing and decision without implementing the requested modifications, resulting in exclusion of disability-related evidence and an outcome issued without meaningful disability-access review.

18. Plaintiffs submitted a written request under the California Public Records Act on July 21, 2025 seeking Rent Program records related to their case, including the administrative file and recording(s) of the hearing. The City acknowledged the request on July 31, 2025, invoked an extension, and promised a determination by August 14, 2025 pursuant to Government Code § 7922.535. The City missed their own deadline, prompting Plaintiffs to send a Notice of Default

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

and Demand for Corrective Action on September 8, 2025. The City responded to Plaintiffs' Notice of Default on September 11, 2025 via email, the reply was largely nonresponsive and contained no meaningful substance related to the requests, ultimately deeming it deficient.

19. Requested records included the complete Rent Program administrative file, all exhibits and evidence submissions, any hearing recording(s), communications and internal determinations related to Plaintiffs' petition, and decision materials.

20. To date, the City has still not produced the requested records or furnished the administrative record sought while Plaintiffs' rent petition remained pending between approximately May 21, 2025 through August 28, 2025, and beyond. This ongoing nonproduction continues to impair Plaintiffs' ability to obtain meaningful review and relief.

21. Plaintiffs' provided City Rent Program representatives with a Google Drive link containing case-related documentation and evidence, and City personnel confirmed receipt and access to the files, yet the City continued to exclude or refuse to incorporate the submitted materials and withheld the complete administrative record and hearing recording.

22. In or around November 2025, following months of retaliation, procedural delay, and unresolved habitability violations, Plaintiffs were displaced from their home. A Sheriff-posted notice and subsequent lockout resulted in Plaintiffs' homelessness, loss of access to personal property, and termination of access to tenant-portal records containing payment histories and maintenance logs.

23. On or about October 10, 2025, Plaintiffs filed proofs of service in the related Superior Court of Contra Costa County's writ proceedings reflecting ongoing service and notice efforts on Respondents, including Redwood, demonstrating that Defendants were repeatedly placed on notice of pending litigation duties, preservation obligations, and the urgency of Plaintiffs' claims.

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

24. In November 2025, the City's counsel filed a notice reflecting an intention to later submit an administrative pleading. Despite that notice, and despite Plaintiffs' ongoing homelessness and urgent need for process, Defendants remained slow-moving and noncompliant in providing meaningful, timely administrative accountability.

25. Defendants' ongoing conduct constitutes discrimination, retaliation, and deprivation of rights under Color of Law, including violations of the Fair Housing Act, 42 U.S.C. §§ 3601–3619, including §§ 3604(f)(1)–(3) and 3617; Title II of the ADA, 42 U.S.C. § 12132 and its implementing regulations including 28 C.F.R. § 35.130 and 28 C.F.R. §§ 35.160–35.164; and 42 U.S.C. § 1983, enforcing the Fourteenth Amendment (Due Process and Equal Protection).

26. Plaintiffs also bring claims under California law including but not limited to FEHA, Gov. Code §§ 12955 and 12926; the Unruh Civil Rights Act, Civ. Code §§ 51–52; California habitability and retaliation statutes including Civ. Code §§ 1941.1, 1942, 1942.4, and 1942.5 (including § 1942.5(f)); the CPRA including Gov. Code §§ 7922.535, 7923.000, and 7923.115; fraud and record violations including Civ. Code §§ 1710(3), 1962, and 1950.5(g); tenant property statutes including Civ. Code §§ 1980–1991; and the Unfair Competition Law, Bus. & Prof. Code §§ 17200, 17201, and 17203.

27. Plaintiffs seek damages, declaratory and injunctive relief, preservation of evidence, restitution and disgorgement, and attorneys' fees and costs authorized by law, including under 42 U.S.C. § 3613(c), 42 U.S.C. § 1988(b), Gov. Code § 12989.2, Civ. Code § 52, and Gov. Code § 7923.115.

28. Plaintiffs plead these allegations based on personal knowledge, documentary evidence, written correspondence, and other materials in their possession, and will further substantiate all claims through discovery and admissible proof.

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

## II.    JURISDICTION AND VENUE

29. This Court has subject-matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 because this action arises under the laws and Constitution of the United States, including the Fair Housing Act, 42 U.S.C. §§ 3601–3619, the Americans with Disabilities Act, Title II, 42 U.S.C. § 12132, and 42 U.S.C. § 1983.

30. This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3)–(4) because Plaintiffs seek to redress the deprivation, under color of state law, of rights secured by the Constitution and laws of the United States.

31. The City's administration and adjudication of its Rent Program constitute state action and a public "service, program, or activity" subject to the Fourteenth Amendment and Title II of the ADA.

32. This Court has supplemental jurisdiction over Plaintiffs' related state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy.

33. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)–(2) because Defendants reside in this District and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in Antioch, Contra Costa County, California.

34. Plaintiffs have exhausted, or are excused from exhausting, any administrative prerequisites applicable to their federal housing and disability claims, including where exhaustion is not required or where further administrative remedies would be futile due to ongoing retaliation, procedural defects, and denial of meaningful access.

35. Exhaustion is not required for Plaintiffs' Fair Housing Act or ADA Title II claims, and Plaintiffs bring these claims to remedy ongoing discrimination, retaliation, and denial of meaningful access to public services and housing rights.

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

36. No other plain, speedy, or adequate remedy exists that can fully redress the past and continuing violations of Plaintiffs' federal and state civil rights alleged herein.

## III.    PARTIES

37. Gary Dartez (herein "Plaintiff Dartez") is a natural person residing in Contra Costa County, California, and resided at the subject property continuously from approximately February 2016 until wrongful displacement in November 2025.

38. Tamisha Latimore (herein "Plaintiff Latimore") is a natural person residing in Contra Costa County, California, and is permanently disabled within the meaning of federal and California law; Plaintiff Latimore resided at the subject property for approximately eighteen months prior to displacement with Defendants' knowledge, acquiescence, and repeated acknowledgment.

39. Plaintiffs are "aggrieved persons" under the FHA, 42 U.S.C. § 3602(i), and are persons protected by Title II of the ADA, FEHA, and the Unruh Act.

40. Defendant REDWOOD PROPERTY INVESTORS III, LLC (herein "Redwood") is, and at all relevant times was, the owner/landlord and controlling entity of the subject premises and a housing provider within the meaning of 42 U.S.C. § 3602(d) and Gov. Code § 12927.

41. Defendant CITY OF ANTIOCH (herein the "City") is a California municipal corporation that enacts and enforces housing and tenant-protection ordinances and administers the City's Rent Program under Antioch Municipal Code Title 11.

42. The City's Rent Program constitutes a "service, program, or activity" of a public entity within the meaning of 42 U.S.C. § 12132.

43. At all relevant times, the City acted under color of state law within the meaning of 42 U.S.C. § 1983 through the administration and adjudication of Plaintiffs' rent petition matter.

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

44. Redwood is a private landlord and housing provider, and Plaintiffs' federal constitutional claims under 42 U.S.C. § 1983 are asserted against the City based on its conduct under color of state law, while Plaintiffs' claims against Redwood arise under the Fair Housing Act and California statutory and common law.

45. Plaintiffs are informed and believe, and on that basis allege, that DOES 1 through 50 are individuals or entities whose identities are unknown but who participated in, directed, authorized, approved, or ratified the acts and omissions alleged herein. Plaintiffs reserve their right to and will amend this Complaint when ascertained.

## IV.    FACTUAL ALLEGATIONS

### A. Long-Term Tenancy, Disability, and Protected Status

46. Plaintiff Dartez maintained continuous tenancy at the subject property from approximately February 2016 through November 2025, paying rent and repeatedly seeking remediation of escalating hazards through informal requests, written complaints, and administrative channels.

47. Plaintiff Latimore, a permanently disabled woman whose disabilities substantially limit one or more major life activities within the meaning of 42 U.S.C. § 12102(1)–(2), 42 U.S.C. § 3602(h), and Gov. Code § 12926, resided at the property for approximately eighteen months prior to displacement, with Defendants' knowledge, acquiescence, and repeated acknowledgment of her lawful occupancy.

48. Defendants were aware of Plaintiff Latimore's disability through direct communications, accommodation-related discussions, written submissions, and the observable functional limitations associated with her condition, triggering obligations under 42 U.S.C. §§ 3604(f)(1)–(3), 42 U.S.C. § 12132, Gov. Code § 12955, and related law.

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

**B. Habitability Violations (2023-2025) and Disability-Related Impact (Including September 8, 2025 Safety Incident)**

49. From at least 2023 through 2025, Redwood permitted persistent and worsening habitability violations including severe cockroach infestations, rodent activity, trash overflow, broken security gates, blocked fire lanes, trespasser activity, unauthorized construction disturbances, repeated water shutoffs, and environmental hazards, rendering the premises "substandard housing" under Health & Safety Code § 17920.3 and violating Civil Code §§ 1941.1 and 1942.4.

50. These conditions disproportionately harmed disabled Plaintiff Latimore by increasing health risks, disrupting daily functioning, and exacerbating disability symptoms, denying equal use and enjoyment under 42 U.S.C. § 3604(f)(2) and Gov. Code § 12955(a).

51. Redwood issued multiple pest-control notices throughout 2024, including September 19, 2024, November 19, 2024, and December 31, 2024, confirming actual knowledge of infestations while failing to permanently remediate them.

52. On or about October 1, 2024, Redwood shut off water service impacting basic sanitation and habitability needs, without adequate mitigation for a household including a permanently disabled tenant, while other substandard conditions persisted.

53. On or about September 8, 2025, Plaintiffs documented a serious safety incident in which knives and other weapons were found in unsecured, overflowing trash on the property immediately after Redwood's personnel cleared out another tenant's unit, and individuals on site discovered the knives in the discarded materials; Plaintiffs possess video documentation of these events.

54. Redwood failed to secure the premises, remove the hazard, or implement corrective

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

measures after notice

### C. Lease and Accounting Record Concealment (January 2023)

55. In January 2023, Plaintiff Dartez formally requested copies of all lease agreements and tenancy records dating back to 2016.

56. Defendants responded by asserting that no leases existed prior to 2023, despite his continuous tenancy since 2016, constituting fraudulent concealment and misrepresentation under Civil Code § 1710(3) and depriving Plaintiffs of material information necessary to assert tenancy rights and defenses, which contributed to evidentiary prejudice.

57. Defendants' refusal to produce historical lease and accounting records impaired Plaintiffs' ability to challenge unlawful rent demands, assert statutory protections, and participate meaningfully in administrative proceedings.

### D. Health Hazards and Certified Notice (March 2025)

58. Between March 8 and March 20, 2025, Plaintiffs experienced a sharp escalation of hazards including intensified infestations, heater failures, repeated water shutoffs, and late-night construction disturbances.

59. Between March 19-20, 2025, a carbon-monoxide alarm activated after Redwood's maintenance worker Juan attempted to "fix" the heater; Plaintiff Dartez became severely ill and vomited, while Plaintiff Latimore passed out, prompting written notice to Redwood on March 21, 2025.

60. On March 10, 2025 and March 24, 2025, Plaintiffs sent certified and written demands requesting remediation of conditions and production of lease and rent-accounting records, providing Defendants formal notice as required under Civil Code § 1942.

---

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

**E. Lawful Rent Withholding and Retaliation (April-July 2025)**

61. By April 2025, conditions satisfied statutory prerequisites for lawful rent withholding under Civil Code §§ 1942 and 1942.4, and Plaintiffs began withholding rent due to Defendants' failure to correct substandard conditions.

62. Defendants responded with retaliatory actions including a 3-day notice to pay rent or quit on April 7, 2025 and another on May 6, 2025, despite ongoing uninhabitable conditions and protected tenant activity, in violation of Civil Code § 1942.5.

63. On April 10, 2025, Defendants conducted a mass "inspection" by multiple management staff pursuant to a notice lacking clear identification or signature, perceived as harassing and retaliatory.

64. On April 16, 2025, Defendants performed temporary pest treatment requiring Plaintiffs' displacement for several hours but failed to remediate infestations.

65. On May 21, 2025, the same day Plaintiffs' rent petition was accepted by the City, Redwood filed an unlawful detainer action alleging rent arrears despite ongoing uninhabitable conditions and protected activity, prohibited as retaliation under Civil Code § 1942.5 and AMC §§ 11-5.03 and 11-5.04; the action was dismissed on July 17, 2025.

66. On July 21, 2025, Redwood served a 3-day notice to cure or quit, targeting disabled Plaintiff Latimore as an "unauthorized occupant," demanding her removal within three days despite long-standing residency and disability, interfering with protected housing rights under 42 U.S.C. § 3617 and AMC §§ 11-5.03 and 11-5.04.

67. On or about July 28, 2025, Redwood filed an unlawful detainer action that targeted Plaintiff Latimore by name and demanded she "cure or quit," further confirming Redwood's discriminatory enforcement and intent to remove the disabled Plaintiff.

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

F. **City Rent Petition Proceedings, ADA Title II Violations, CPRA Noncompliance, and Deprivation of Rights Under Color of Law**

68. On May 21, 2025, the City accepted Plaintiffs' rent petition under AMC Title 11, triggering mandatory duties to provide a timely and accessible administrative process consistent with AMC § 11-3.06(C), AMC §§ 11-5.03 and 11-5.04, the Fourteenth Amendment, 42 U.S.C. § 1983, and Title II of the ADA, 42 U.S.C. § 12132, including 28 C.F.R. § 35.130 and 28 C.F.R. §§ 35.160–35.164.

69. AMC § 11-3.06(C) required issuance of a written decision within sixty (60) days absent an agreed extension; Plaintiffs did not agree to any extension.

70. A pre-hearing conference set for July 15, 2025 was cancelled at the last minute, leaving Plaintiffs without process while retaliation continued.

71. The City did not conduct the hearing until August 14, 2025, and issued a written decision on August 28, 2025—approximately Day 99—exceeding the statutory deadline.

72. During the hearing, the City excluded or failed to incorporate material evidence including disability documentation and habitability proof, and failed to provide effective accommodations required by 28 C.F.R. §§ 35.160–35.164.

73. The August 28, 2025 decision was served with an unsigned proof of service and misspelled Plaintiff Latimore's name, depriving Plaintiffs of notice and meaningful access.

74. On July 21, 2025, Plaintiffs submitted a CPRA request seeking Rent Program records including the administrative file and hearing recording. The City acknowledged the request July 31, 2025, promised determination by August 14, 2025 pursuant to Gov. Code § 7922.535, and failed to produce records as of September 8, 2025 in violation of Gov. Code § 7923.000.

75. As of February 12, 2026 the City still has not produced the requested records,

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

continuing to obstruct Plaintiffs' ability to obtain process and judicial review.

76. The City's noncompliance with mandatory deadlines and nondiscrimination duties constitutes deprivation of rights under color of law under 42 U.S.C. § 1983, including Fourteenth Amendment Due Process and Equal Protection, and supports state mandatory duty liability under Gov. Code § 815.6 and nondiscrimination violations under Gov. Code § 11135.

77. The City's exclusion of Plaintiff Latimore's disability documentation and written accommodation requests, and its refusal to implement effective communication and process modifications, denied Plaintiff Latimore meaningful access to the Rent Program by reason of her disability, and denied Plaintiff Dartez meaningful access as an associated participant pursuing protected housing rights.

## G. Displacement, Property Loss, Evidence Control, and Continuing Harm

78. In November 2025, after months of retaliation, administrative obstruction, and unresolved hazards, Plaintiffs were displaced from their home. On or about November 7, 2025, Plaintiffs suffered displacement and forced move-out conditions resulting from retaliatory eviction actions. On or about November 10, 2025, sheriff lockout activity and/or possession enforcement occurred, rendering Plaintiffs homeless. Plaintiffs last observed their personal property inside the unit on or about November 29, 2025. On or about December 10, 2025, additional sheriff restoration/lockout activity occurred, confirming Plaintiffs' loss of possession and access.

79. As a direct and proximate result, Plaintiffs were deprived of stable housing, essential property, medications, medical equipment, and daily living necessities, causing severe disability-related harm and economic loss.

80. Thereafter, Redwood removed, destroyed, or disposed of Plaintiffs' belongings

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

without providing lawful notice or an opportunity to reclaim them, violating Civ. Code §§ 1980–1991.

81. Plaintiffs' property losses and deprivation occurred through Redwood's private conduct and failures to provide required notice and opportunity to reclaim property following the lockout process, supporting statutory tenant-property violations and conversion-based remedies. Plaintiffs reserve all rights to seek appropriate preservation and evidentiary relief regarding missing records.

82. On or about December 30, 2025, Redwood terminated Plaintiffs' access to the tenant portal, thereby depriving them of payment histories, maintenance logs, and other records central to their claims. This conduct supports Plaintiffs' request for preservation and evidentiary relief pending litigation of this action.

83. Plaintiff Dartez's vehicle was towed on or about December 29, 2025 and recovered on January 5, 2026 upon payment of $990.00 to the tow company, Fernandes Auto Wrecking & Towing Inc. Notice deficiencies are described herein.

84. Plaintiffs also allege that in the City's response to their ex parte application, the City represented on the record that Redwood was found responsible for excessive rent increases in the approximate amount of $2,396.06 during the City's rent-program investigation, further supporting distrust of Redwood's accounting practices and Plaintiffs' need for full fiscal production and relief.

85. The City's continued withholding of the administrative record and hearing recording(s) has prevented Plaintiffs from obtaining timely review, while Plaintiffs remain displaced and the harm continues to compound.

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

**Spoliation, Evidence Control, and Portal Termination**

86. Redwood's evidence control, record concealment, and portal termination substantially impaired Plaintiffs' ability to prosecute claims and defend their rights, further supporting preservation obligations and sanctions relief, including adverse inference relief where authorized.

87. Plaintiffs This evidence includes, at minimum, Plaintiffs' tenant-portal payment history, maintenance logs, lease and accounting records, plus any Rent Program administrative file materials and hearing recording(s), all of which remain within Defendants' custody and control.

**Martinez Writ Proceeding (Filed September 17, 2025) and Continuing Delay / Harm**

88. On September 17, 2025, Plaintiffs filed a verified writ/mandamus proceeding in the Superior Court of California, County of Contra Costa (Martinez) to compel statutory and administrative compliance and production of the administrative record.

89. Redwood has not made a single appearance in that writ proceeding to date, despite Plaintiffs' repeated certified mailings and service of filings.

90. City Counsel (Meyers Nave) has proceeded slowly, previously indicating an administrative filing would be made, yet the City continues to withhold the Rent Program's administrative record requested during the pendency of Plaintiffs' petition and thereafter.

91. In the City's response to Plaintiffs' Ex Parte filing, City Counsel placed on the court record that Redwood was found to have engaged in excessive rent increases during the Rent Program's investigation in the amount of approximately $2,396.06, supporting Plaintiffs' fraud and accounting concerns.

92. The City seeks further delay, including approximately 190 more days, through

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

approximately July 20, 2026, to make an administrative filing, adding to Plaintiffs' harm while Plaintiffs remain homeless and indigent.

## H. Irreparable Harm and Causation (City Obstruction + Landlord Retaliation → Displacement)

93. As a result of the City's delay and nonproduction, Plaintiffs lacked timely protections and meaningful administrative relief while Redwood escalated enforcement during Plaintiffs' protected activity and documented uninhabitable conditions.

94. Plaintiffs' displacement and resulting homelessness are the culmination of Defendants' combined misconduct: Redwood's escalating retaliation and habitability violations, and the City's deprivation of meaningful administrative process and record access under color of law.

95. As a result of the City's delay, defective adjudication, and continued withholding of the administrative record and recording(s) of the hearing, Plaintiffs were deprived of timely and meaningful administrative enforcement and review while Redwood escalated retaliatory enforcement during Plaintiffs' protected activity and documented uninhabitability. By withholding the record necessary for meaningful review and relief while failing to administer the Rent Program process in a timely and accessible manner, the City foreclosed the practical availability of the Rent Program's protections and corrective mechanisms during the period when intervention could have prevented or mitigated Plaintiffs' displacement, resulting in homelessness-related harms that continued to worsen thereafter.

## V. CAUSES OF ACTION

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

## FIRST CAUSE OF ACTION

### Disability Discrimination in Housing

(Fair Housing Act, 42 U.S.C. §§ 3601–3619, including 42 U.S.C. §§ 3604(f)(1)–(3) & 3613(c); 42 U.S.C. § 3602(h); 42 U.S.C. § 12102(1)–(2); FEHA, Gov. Code §§ 12955, 12926, 12989.2; Civ. Code §§ 51–52 (as applicable to associated harms))

### Against Defendants Redwood Property Investors III, LLC and DOES 1-50

96. Plaintiffs reallege and incorporate by reference paragraphs 1 through 95, inclusive, as though fully set forth herein.

97. Plaintiff Latimore is an individual with a permanent disability and is disabled within the meaning of 42 U.S.C. § 3602(h), 42 U.S.C. § 12102(1)–(2), and Gov. Code § 12926. Plaintiff Dartez is protected as an associated person and member of the same household.

98. Defendant Redwood is a housing provider engaged in the rental and operation of dwelling units within the meaning of 42 U.S.C. § 3602(d) and Gov. Code § 12927, and is subject to the Fair Housing Act and FEHA.

99. Redwood had actual knowledge of Plaintiff Latimore's disability and disability related housing needs through Plaintiffs' communications, disability-related discussions and documentation, Redwood's onsite interactions with Plaintiff Latimore as a household resident, and Redwood's repeated dealings with the household as tenants/residents at the subject property.

100. From at least 2023 through 2025, Redwood failed to timely remedy materially substandard housing conditions at Plaintiffs' dwelling and common areas, including; persistent pest/infestation problems, sanitation and trash overflow conditions, broken gates & security failures, as well as fire-safety hazards, while continuing to demand rent alongside escalating enforcement actions against Plaintiffs. These conditions were foreseeably and disproportionately harmful to Plaintiff Latimore due to her disability, being that Redwood knew or should have

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

known the unsafe conditions would exacerbate disability-related symptoms and impair Plaintiff Latimore's ability to safely use & enjoy the dwelling.

101.    On or about July 21, 2025, Plaintiffs sought disability-related accommodations and nondiscriminatory treatment from Redwood in connection with Plaintiff Latimore's lawful household occupancy, including that Redwood recognize Plaintiff Latimore as a lawful resident household member, cease treating her as an "unauthorized occupant," correct any internal tenancy records used to justify adverse enforcement, and engage in the interactive accommodation process required by fair-housing law.

102.    Instead of granting the requested accommodation or engaging in any good-faith interactive process, Redwood refused and/or failed to provide the accommodation, escalating enforcement by serving a "3-Day Notice to Cure or Quit" dated July 21, 2025, demanding Plaintiff Latimore's removal from the household or surrender of possession under threat of eviction.

103.    Redwood's July 21, 2025 notice and related actions constituted discrimination in the terms, conditions, privileges, and enforcement of housing. Redwood's failure to make reasonable accommodations necessary to afford Plaintiff Latimore equal opportunity to use and enjoy the dwelling violates 42 U.S.C. § 3604(f)(1)–(3) and Gov. Code § 12955, including but not limited to discrimination by:

    a)  making housing unavailable and attempting to force removal of a disabled household member;

    b)  imposing unequal terms, conditions, and enforcement actions based on disability and disability-related needs; and

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

c) refusing reasonable accommodations and failing to engage in the required interactive process.

104. Redwood's discriminatory conduct was carried out through its employees, agents, or managers whom were responsible for tenant enforcement, leasing administration, and premises maintenance. Redwood's staff acted within the course and scope of agency and for the Defendant(s) benefit, through DOES 1 through 50, whose identities are currently unknown.

105. As a direct and proximate result of Redwood's discriminatory conduct, refusal to reasonably accommodate, and disability-targeted enforcement actions (including the July 21, 2025 notice), Plaintiffs suffered and continue to suffer loss of housing stability, escalation of eviction/retaliation pressure, disability exacerbation, emotional distress, economic harm and out-of-pocket losses, and homelessness-related injury.

106. Plaintiffs are entitled to relief under 42 U.S.C. § 3613(c) as well as Gov. Code § 12989.2. This includes compensatory damages, statutory and equitable relief as authorized, furthermore, injunctive relief will prevent discriminatory enforcement, interference with lawful occupancy, allowing for the recovery of attorneys' fees and costs as applicable

## SECOND CAUSE OF ACTION

**Retaliation and Interference with Protected Housing Rights**
(Cal. Civ. Code §§ 1942.5, 1942, 1942.4; Fair Housing Act, 42 U.S.C. § 3617)

**Against Defendants Redwood Property Investors III, LLC and DOES 1-50**

107. Plaintiffs reallege and incorporate by reference paragraphs 1 through 106, inclusive, as though fully set forth herein.

**A. Protected Activity / Lawful Exercise of Tenant Rights**

108. Plaintiffs engaged in protected activity and exercised lawful tenant rights, including but not limited to:

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

    i.    asserting statutory habitability rights, demanding repairs and remediation of substandard conditions;

    ii.    lawfully withholding rent beginning on or about April 2025 due to uninhabitable conditions and Defendant's failure to cure, including pursuant to Cal. Civ. Code §§ 1942 and 1942.4; and

    iii.    initiating and pursuing administrative relief through the City of Antioch Rent Program, including the Rent Petition accepted on or about May 21, 2025, and submitting documentation and evidence in support of Plaintiffs' protected rights.

109.    Plaintiffs' protected activity further included opposing discrimination and enforcing the rights of Plaintiff Latimore, a permanently disabled household member whose disability and disability-related needs were known to Redwood through communications, onsite presence, and disability-related documentation.

**B.  Redwood's Knowledge**

110.    Defendant Redwood had actual knowledge of Plaintiffs' protected activities, including Plaintiffs' lawful rent withholding and pursuit of Rent Program relief, because Redwood received Plaintiffs' communications and evidence, interacted directly with Plaintiffs regarding habitability concerns, and served notices and pursued enforcement actions while Plaintiffs' administrative petition remained pending.

**C.  Adverse Actions / Retaliatory Conduct**

111.    Following Plaintiffs' exercise of protected rights—including lawful withholding beginning in April 2025—Redwood took materially adverse actions intended to punish Plaintiffs, deter continued enforcement of statutory rights, and force Plaintiffs to surrender possession, including but not limited to:

---

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

a) **April 7, 2025:** Redwood served a 3-Day Notice to Pay Rent or Quit despite Plaintiffs' asserted habitability rights and ongoing substandard conditions;

b) **May 6, 2025:** Redwood served an additional 3-Day Notice to Pay Rent or Quit, continuing its escalation and coercive pressure campaign;

c) **May 21, 2025:** On the same date Plaintiffs' Rent Petition was accepted by the City Rent Program (May 21, 2025), Redwood filed an unlawful detainer action alleging arrears and seeking possession while Plaintiffs' petition and habitability assertions were pending, thereby weaponizing eviction procedures against Plaintiffs' protected enforcement activity;

d) **July 17, 2025:** The unlawful detainer action was dismissed without adjudication on the merits, reinforcing that Redwood's filing functioned as pressure and retaliation rather than a good-faith enforcement action; and

e) **July 21, 2025:** Redwood served a 3-Day Notice to Cure or Quit targeting Plaintiff Latimore, the disabled household member, as an "unauthorized occupant," demanding removal or surrender of possession, despite Redwood's prior knowledge of her lawful occupancy and disability status, thereby combining retaliation with disability-based interference.

112. Redwood's notices and eviction escalation were materially adverse and coercive. They were intended to intimidate Plaintiffs, compel waiver of statutory rights, and force Plaintiffs to abandon lawful withholding, habitability enforcement, and administrative petitioning instead of obtaining relief through lawful channels.

**D. Causation (Retaliatory Motive and Temporal Link)**

113. Redwood's retaliatory conduct was causally connected to Plaintiffs' protected

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

activity. Redwood's adverse acts occurred within months of Plaintiffs' lawful withholding and enforcement of habitability rights beginning in April 2025, further acts escalating during the active Rent Petition proceedings. The timing and sequence—particularly the unlawful detainer filed on May 21, 2025 during the pending petition, followed by the July 21, 2025 Cure-or-Quit targeting the disabled household member—support a reasonable inference that Redwood acted because Plaintiffs invoked protected tenant rights rather than surrendering possession.

### E.  FHA § 3617 – Coercion, Intimidation, Threats, and Interference

114.    Redwood's conduct further violated 42 U.S.C. § 3617, which prohibits coercion, intimidation, threats, and interference with a person's exercise or enjoyment of rights protected under the Fair Housing Act. Redwood interfered with Plaintiffs' FHA-protected rights by using eviction notices, coercive enforcement tactics, and a targeted Cure-or-Quit directed at the disabled household member to intimidate Plaintiffs and interfere with disability-related housing rights, including the right to maintain a disabled household member in the home and to be free from disability-based coercion and interference.

### F.  Resulting Harm and Damages

115.    As a direct and proximate result of Redwood's retaliatory and interfering conduct, Plaintiffs suffered damages including loss of housing stability, escalation of enforcement and retaliation-related harms, emotional distress, disability exacerbation, economic losses, and additional consequential injuries according to proof.

### G.  Statutory Remedies

116.    Plaintiffs are entitled to all remedies authorized by law, including statutory damages and civil penalties under Cal. Civ. Code § 1942.5, compensatory damages, injunctive relief prohibiting further retaliation and interference, as well as attorneys' fees and costs as

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

authorized under applicable law, including fee-shifting provisions available under the Fair Housing Act.

## THIRD CAUSE OF ACTION

**42 U.S.C. § 1983 — Deprivation of Rights Under Color of Law; Denial of Procedural Due Process and Equal Protection**
. (U.S. Const. amend. XIV; 42 U.S.C. § 1983; Attorneys' fees, 42 U.S.C. § 1988(b))

### Against Defendant City of Antioch

117.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 116, inclusive, as though fully set forth herein.

118.    Defendant City of Antioch; created, administered, and adjudicated a municipal Rent Program under Antioch Municipal Code Title 11. The Rent program included the following actions; petition intake, scheduling, hearing procedures, evidence acceptance and consideration, issuance and service of written determinations, resulting in the control of an administrative record with hearing recording(s) required for meaningful review.

119.    The City's Rent Program adjudication directly affected Plaintiffs' housing stability protections and their access to municipal relief. Plaintiffs were therefore entitled to minimum procedural due process and equal protection under the Fourteenth Amendment, including timely adjudication, a meaningful opportunity to present relevant evidence, nondiscriminatory access to the adjudicatory process, reliable notice and service, that should have resulted in the meaningful access to the administrative record necessary to evaluate and challenge the City's determination.

120.    Acting under color of state law, the City deprived Plaintiffs of minimum procedural due process and equal access in connection with Plaintiffs' Rent Program proceeding by engaging in and permitting the following conduct:

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

a) The City accepted Plaintiffs' Rent Petition on or about May 21, 2025, but did not conduct the hearing until August 14, 2025 (approximately day 85);

b) The City issued its written decision on or about August 28, 2025 (approximately Day 99), beyond the mandatory decision timeline required absent an agreed extension;

c) The City excluded and minimized essential disability documentation, ignoring written requests and submissions intended to ensure meaningful participation and a nondiscriminatory record;

d) The City's defective written decision and improper service procedures undermined the integrity of the notice, prejudicing the Plaintiffs' ability to preserve their rights and seek a timely review.

e) By withholding the complete administrative record and hearing recordings, the City prevented a meaningful review and proper oversight of its adjudication.

121. The City's conduct was not a harmless error; it was a series of outcome-affecting omissions that caused tangible prejudice. By withholding records, excluding evidence, and ignoring mandatory timelines, the City effectively foreclosed any chance of timely relief during the Plaintiffs' window of maximum vulnerability. These failures prevented corrective action before harms escalated and stripped the Plaintiffs of the essential materials needed for a meaningful judicial review.

122. As a direct and proximate result of the City's deprivation of procedural due process and equal access, Plaintiffs suffered damages including loss of housing stability, escalation of retaliation-related harms, homelessness-related injury, emotional distress, disability exacerbation, economic loss, and denial of meaningful access to remedies.

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

123.    Plaintiffs seek all available relief, including compensatory damages, declaratory and injunctive relief, and an award of attorneys' fees and costs under 42 U.S.C. § 1988(b)."

## FOURTH CAUSE OF ACTION

### Municipal Liability – Policy, Custom, Failure to Train / Supervise, and Ratification (Monell)
(42 U.S.C. § 1983 — Policies/Customs/Failure to Train; U.S. Const. amend. XIV; Attorneys' fees, 42 U.S.C. § 1988(b))

### Against Defendant City of Antioch

124.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 123, inclusive, as though fully set forth herein.

125.    The City of Antioch, acting under color of state law, carries out its Rent Program through a comprehensive administrative process—including petition intake, hearing adjudication, the issuance of written determinations, and the maintenance of the official record—all of which are required for meaningful judicial review.

### A. Final Policymakers / Final Decisionmaker (Identified by Title and by Name)

126.    The City's Rent Program is administered through the City's official policy structure. The City Attorney's Office exercises direct authority over program procedures and designates the Hearing Officer responsible for adjudicating petitions. These adjudications result in written determinations that constitute final City action, subject only to judicial review.

127.    On information and belief, the Hearing Officer assigned to Plaintiffs' proceeding (identified as Michael H. Roush) acted as the City's designated adjudicator. In this capacity, he exercised final policymaking and decision-making authority on behalf of the City and issued the final written decision regarding Plaintiffs' petition.

128.    Since the Hearing Officer's written determination constitutes the City's final

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

administrative decision on Plaintiffs' petition, Hearing Officer Roush's actions and omissions in Plaintiffs' Rent Program proceeding constituted final municipal action for purposes of 42 U.S.C. § 1983, including municipal liability where such final action implements, executes, or ratifies unconstitutional policies, customs, and practices.

**B. City Policies, Customs, and Practices Causing Constitutional Violations**

129.    The City's Rent Program operations constitute a persistent pattern and practice of constitutional deprivation. By failing to provide meaningful access or equal participation to disabled tenants, these municipal policies were the moving force behind the denial of Plaintiffs' rights to due process and equal protection.

130.    On information and belief, the violations described herein resulted from standardized Rent Program procedures and systemic deficiencies in training and supervision. These practices were affirmatively implemented, maintained, or tolerated by the City and the City Attorney's Office; they represent the City's settled policy and are not the result of isolated or accidental errors.

**Custom / Practice: Untimely Decision making Beyond Mandatory Deadlines (Deprivation of Timely Process)**

131.    The City maintained and/or tolerated a practice of issuing Rent Program decisions beyond mandatory timelines required by the City's Ordinance, depriving tenants of timely process and access to meaningful relief. In Plaintiffs' matter, the City accepted the Rent Petition on May 21, 2025, did not hold the hearing until August 14, 2025 (approximately Day 85), and issued its written decision on August 28, 2025 (approximately Day 99), well beyond the required deadline.

132.    This untimely adjudication deprived Plaintiffs of meaningful and timely Rent

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

Program protections during the critical period when administrative relief was needed most, and foreseeably increased exposure to escalating retaliation-related and enforcement harms before corrective action could be obtained, in violation of Plaintiffs' rights secured by the Due Process Clause of the Fourteenth Amendment.

**Custom / Practice: Defective Notice, Service, and Proof of Mailing (Procedural Unfairness)**

133.    The City maintained and/or tolerated a practice of defective notice, defective service, and unreliable decision-delivery procedures, including inaccurate, incomplete, unsigned, and otherwise unreliable proof of service and mailing practices that undermined tenants' ability to understand decisions, preserve rights, and seek timely review.

134.    In Plaintiffs' matter, the City's decision delivery/service was defective and prejudicial, including errors affecting notice integrity resulting in Plaintiffs' ability to timely respond, preserve rights, and pursue meaningful review, resulting in deprivation of fair procedures in violation of the Fourteenth Amendment.

**Custom / Practice: Exclusion of Disability Evidence / Failure to Provide Equal Access (Denial of Meaningful Participation)**

135.    The City maintained and tolerated a practice of refusing to accept, incorporate, or meaningfully consider disability-related documentation and evidence submitted by tenants, and/or refusing to implement procedures required to ensure disabled individuals have equal opportunity to participate in the Rent Program process.

136.    In Plaintiffs' Rent Program proceeding, Plaintiffs submitted disability-related materials and requested accommodations necessary for equal participation. The City excluded, minimized, and refused to incorporate disability-related evidence in the adjudication and

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

30 OF 62

decision-making process, thereby denying Plaintiffs meaningful participation as well as access to Rent Program protections, in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.

**Custom / Practice: Withholding Administrative Record and Hearing Recording (Foreclosing Meaningful Review)**

137. The City maintained and tolerated a practice of withholding the administrative record and hearing recording(s) required for meaningful review, judicial oversight, and corrective relief.

138. In Plaintiffs' proceeding, the City withheld the administrative record and hearing recording(s) necessary for meaningful review of the August 28, 2025 decision, thereby foreclosing Plaintiffs' ability to obtain prompt corrective relief and effectively pursue judicial review during the critical window when Rent Program protections were intended to operate, in violation of due process and rights secured by 42 U.S.C. § 1983.

**C. Failure to Train, Supervise, and Implement Safeguards**

139. The City failed to train and supervise Rent Program staff and agents, and failed to implement safeguards necessary to prevent predictable constitutional violations in Rent Program proceedings, including safeguards to ensure:

    a) compliance with mandatory timelines,

    b) reliable proof of service and decision delivery,

    c) intake and incorporation of disability-related evidence and accommodation-related materials, and

    d) preservation and timely production of the administrative record and hearing recording.

140. The City's failure to train and supervise reflected deliberate indifference to the

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

known and obvious risk that Rent Program participants would be deprived of meaningful process and meaningful access to a City-administered program, including disabled individuals whose participation depends upon reasonable procedural modifications and nondiscriminatory evidence acceptance.

### D. Notice, Ratification, and Deliberate Indifference After Written Requests

141.    Plaintiffs provided the City with written notice of its legal deficiencies and requested corrective action. To facilitate a meaningful review, Plaintiffs sought necessary records through the City's public records process and submitted requests for disability-related accommodations and the inclusion of evidence.

142.    Plaintiffs submitted a CPRA request dated July 21, 2025, and the City issued an extension acknowledgment dated July 31, 2025, promising a determination by August 14, 2025, yet the City failed to timely produce records, failed to cure defects, and maintained practices that foreclosed meaningful review.

143.    Despite this notice, the City—through its Rent Program administration and responsible officials—failed to correct the known deficiencies, failed to provide the administrative record and hearing recording necessary for meaningful review, and maintained the defective outcome. These post-notice acts and omissions constituted ratification of unconstitutional practices and deliberate indifference to Plaintiffs' federally protected rights.

### E. Moving Force Causation and Damages

144.    The City's aforementioned policies, customs, and failures to train or supervise coupled with its subsequent ratification—served as the moving force behind the deprivation of Plaintiffs' constitutional rights. Specifically, these municipal acts denied Plaintiffs meaningful due process and obstructed their access to Rent Program protections.

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

145.    As a direct and proximate result of the City's unconstitutional policies, customs, and ratification, Plaintiffs suffered loss of housing stability, escalation of retaliation-related injury, homelessness-related harms, emotional distress, economic losses, and disability exacerbation.

**F.  Relief and Attorneys' Fees**

146.    Plaintiffs are entitled to all relief authorized by law, including compensatory damages, declaratory and injunctive relief, and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and other applicable authorities.

## FIFTH CAUSE OF ACTION

**Americans with Disabilities Act (Title II) — Denial of Meaningful Access / Failure to Accommodate**
**(42 U.S.C. § 12132; 28 C.F.R. § 35.130; 28 C.F.R. §§ 35.160–35.164)**

**Against Defendant City of Antioch**

147.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 146, inclusive, as though fully set forth herein.

148.    Plaintiff Latimore is a qualified individual with a disability within the meaning of 42 U.S.C. § 12131(2) and 42 U.S.C. § 12102(1)–(2).

149.    Defendant City of Antioch is a public entity within the meaning of 42 U.S.C. § 12131(1) and administers and operates the City Rent Program under Antioch Municipal Code Title 11.

150.    Plaintiffs were entitled to meaningful, nondiscriminatory access to the City's Rent Program, including effective communication and reasonable modifications to policies, practices, and procedures necessary to afford Plaintiff Latimore an equal opportunity to participate in and

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

benefit from the Rent Program process, as required by 42 U.S.C. § 12132 and 28 C.F.R. §§ 35.130, 35.160–35.164.

151.    Following the acceptance of their Rent Petition on May 21, 2025, Plaintiffs participated in the City Rent Program process by submitting all necessary documentation, including evidence of Plaintiff Latimore's disability.

152.    Plaintiffs requested disability-related accommodations and reasonable procedural modifications to ensure meaningful participation, including at least:

a)   Incorporation of Plaintiff Latimore's disability documentation and related submissions into the evidentiary record for formal adjudication; and

b)   Provision of effective communication and procedural modifications to ensure full and equal participation, including the measures necessary to preserve disability-related evidence for meaningful review.

153.    The City denied or effectively denied Plaintiffs' requested accommodations by:

a)   excluding, refusing to incorporate, minimizing, and/or disregarding Plaintiff Latimore's disability documentation and disability-related evidence despite written requests;

b)   proceeding to adjudicate without implementing reasonable modifications necessary for equal participation;

c)   issuing a defective decision and/or defective decision service; and

d)   withholding the administrative record and hearing recording(s) necessary for meaningful review of the City's determination.

154.    The City's denial of accommodations deprived Plaintiff Latimore of meaningful

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

access to the Rent Program proceeding and its protections. The City did not conduct the hearing until August 14, 2025 and did not issue the written decision until August 28, 2025, thereby denying timely and meaningful access during the period when Rent Program protections were needed to mitigate escalating enforcement and retaliation-related harms.

155.    The City acted with deliberate indifference by receiving Plaintiff Latimore's disability documentation and accommodation-related requests, yet excluding that evidence, refusing to implement reasonable modifications, finalizing the decision, and withholding the record/recording in a manner that foreseeably denied meaningful access and caused outcome-affecting prejudice.

156.    As a direct and proximate result, Plaintiffs were denied meaningful access to the City's Rent Program on the basis of disability. Consequently, they suffered procedural and evidentiary prejudice, housing instability, exacerbation of disability, emotional distress, and economic loss.

157.    Plaintiffs seek relief as authorized by law, including compensatory damages, declaratory and injunctive relief, and such further relief as the Court deems just and proper.

## SIXTH CAUSE OF ACTION

**California Public Records Act (CPRA) — Injunctive Relief Compelling Production and Mandatory Fees**
(Gov. Code §§ 7922.535, 7923.000, 7923.115)

**Against Defendant City of Antioch**

158.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 157, inclusive, as though fully set forth herein.

159.    On July 21, 2025, Plaintiffs submitted a written CPRA request to Defendant City

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

of Antioch seeking specific, identifiable public records concerning Rent Program administration and procedures. These records are non-exempt and essential for Plaintiffs to monitor the City's performance of its public duties.

160.    On July 31, 2025, the City acknowledged the request and invoked a statutory extension under Gov. Code § 7922.535, establishing a final response deadline of August 14, 2025.

161.    The City failed to produce any records by the August 14, 2025 deadline. On September 8, 2025, Plaintiffs issued a Notice of Default and Demand for Corrective Action, providing the City five (5) days to comply before Plaintiffs sought judicial intervention.

162.    On September 11, 2025, the City issued a substantively deficient production. The City failed to conduct a diligent search or produce responsive, non-exempt records, providing instead insubstantial and nonresponsive materials that did not satisfy the City's obligations under Gov. Code § 7922.530.

163.    The City's failure to provide a timely, complete, and responsive production constitutes an unlawful withholding of public records. This obstruction denied Plaintiffs their right to inspect public information and hindered their ability to pursue meaningful relief within the Rent Program's enforcement window.

164.    As a direct and proximate result of the City's non-compliance, Plaintiffs have been prejudiced in their ability to enforce their legal rights and have suffered a denial of the "fundamental and necessary right of every person in this state to have access to information concerning the conduct of the people's business" (Gov. Code § 7921.000).

165.    WHEREFORE, Plaintiffs pray for judgment against Defendant City of Antioch and the Antioch Rent Program as follows: (a) for an order compelling production of all

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

nonexempt records responsive to Plaintiffs' CPRA request(s) …; (b) for declaratory relief that the City violated the CPRA …; (c) for such further relief as the Court deems just and proper. As prevailing parties in this CPRA enforcement action, Plaintiffs are entitled to recover reasonable attorneys' fees and costs pursuant to Government Code § 7923.115.

## SEVENTH CAUSE OF ACTION

### Unruh Civil Rights Act
(Civ. Code §§ 51, 52)

### Against Defendants Redwood Property Investors III, LLC and DOES 1–50

166.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 141, inclusive, as though fully set forth herein.

167.    The Unruh Civil Rights Act guarantees all persons full and equal accommodations, advantages, facilities, privileges, or services in business establishments, and prohibits disability discrimination. (Civ. Code § 51(b).) A violation of the Americans with Disabilities Act constitutes a violation of the Unruh Act. (Civ. Code § 51(f).)

168.    Plaintiff Latimore is disabled and entitled to full and equal housing-related services and privileges, including nondiscriminatory enforcement and equal access to continued occupancy. Redwood had actual knowledge of Plaintiff Latimore's disability and residency through communications, documentation, and its direct dealings with Plaintiffs.

169.    Redwood violated the Unruh Act by discriminating against Plaintiff Latimore on the basis of disability through unequal and exclusionary enforcement, including serving a July 21, 2025 3-day notice to cure or quit that targeted Plaintiff Latimore as an "unauthorized occupant" and demanded her removal within three (3) days as a condition of continued tenancy, despite her known disability and established residency, in violation of Civ. Code § 51 and Civ. Code § 51(f). Redwood escalated this exclusionary enforcement by filing an unlawful detainer

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

on or about July 28, 2025 naming Plaintiff Latimore and demanding that she "cure or quit," confirming the intent to remove her from the household, and this escalation occurred while Plaintiffs' rent petition remained pending under Antioch Municipal Code Title 11, including AMC §§ 11-5.03 and 11-5.04.

170. Plaintiffs suffered damages, including loss of housing stability, escalation of displacement pressure, emotional distress, disability-related harm, and economic loss.

171. Plaintiffs are entitled to statutory damages of no less than $4,000 per violation, actual damages, injunctive relief as appropriate, and attorneys' fees and costs pursuant to Civ. Code § 52.

## EIGHTH CAUSE OF ACTION

### Unfair Competition Law
### (Bus. & Prof. Code §§ 17200, 17203)

### Against Defendants Redwood Property Investors III, LLC and DOES 1–50

172. Plaintiffs reallege and incorporate by reference paragraphs 1 through 147, inclusive, as though fully set forth herein.

173. The Unfair Competition Law ("UCL") prohibits any unlawful, unfair, or fraudulent business act or practice. (Bus. & Prof. Code § 17200.) Redwood engaged in unlawful, unfair, and fraudulent business practices in connection with its operation, management, and enforcement of the subject tenancy.

174. Redwood's conduct constitutes "unlawful" UCL practices because it was predicated on violations of statutory and common-law duties pled herein, including the habitability/unlawful rent demand and related misconduct described in this Complaint (including as pled in the Habitability/Unlawful Rent Demands cause of action) and the fraud/record concealment misconduct described in this Complaint (including as pled in the Fraud/Fraudulent

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

38 OF 62

Concealment cause of action), together with Redwood's retaliation-related enforcement escalation and tenant-property misconduct as alleged. These predicate violations are alleged in detail above and are incorporated by reference. These include, at minimum, Civil Code §§ 1941.1, 1942.4, 1942.5, 1962, 1950.5(g), Health & Safety Code § 17920.3, plus the tenant property duties under Civil Code §§ 1980–1991, as alleged.

175.     Redwood's conduct constitutes "unfair" practices because it leveraged its superior bargaining power and control of housing and records to maintain substandard conditions, obstruct Plaintiffs' access to material tenancy and accounting information, and escalate coercive enforcement tactics during Plaintiffs' protected activity, thereby causing substantial injury that is not outweighed by any countervailing benefit and could not reasonably have been avoided by Plaintiffs. Such practices offend established public policy reflected in California's tenant-protection, habitability, anti-retaliation, and disclosure statutes, and the resulting harm to Plaintiffs substantially outweighs any purported utility.

176.     Redwood's conduct constitutes "fraudulent" practices because Redwood's concealment and misrepresentations regarding material tenancy and record information were likely to deceive reasonable tenants and did deceive Plaintiffs, thereby impairing Plaintiffs' ability to evaluate charges, enforce statutory rights, and defend against escalating enforcement actions, as alleged.

177.     As a direct and proximate result of Redwood's unlawful, unfair, and fraudulent business practices, Plaintiffs suffered loss of money and property, including out-of-pocket expenses, displacement-related economic harm, and loss of access to tenancy records and property, as alleged herein. Redwood was unjustly enriched by collecting and/or demanding rent, fees, and charges while the premises were substandard and while Plaintiffs were deprived of

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

39 OF 62

truthful tenancy and accounting disclosures. Plaintiffs seek only the remedies authorized under the UCL, including injunctive relief to enjoin Redwood's unlawful practices and compel compliance with statutory duties, and restitution and disgorgement of monies wrongfully obtained or retained, pursuant to Bus. & Prof. Code § 17203, together with such further equitable relief as the Court deems proper.

### NINTH CAUSE OF ACTION

**Negligence / Negligence Per Se**
(Civ. Code § 1714; Civ. Code §§ 1941.1, 1942.4; Health & Safety Code § 17920.3)

**Against Defendants Redwood Property Investors III, LLC and DOES 1–50**

178.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 155, inclusive, as though fully set forth herein.

179.    At all relevant times, Redwood owned, controlled, operated, managed, and maintained the subject residential property, including Plaintiffs' unit and the common areas, and Redwood owed Plaintiffs a duty to use reasonable care to maintain the premises in a safe and habitable condition. (Civ. Code § 1714.)

180.    Redwood also owed Plaintiffs statutory duties to provide and maintain residential premises that were safe, sanitary, and fit for human habitation, including compliance with Civil Code § 1941.1 and correction of conditions constituting "substandard building" or "substandard housing" under Health & Safety Code § 17920.3, and Redwood was prohibited from demanding and/or collecting rent during periods when the premises were substandard as pled herein. (Civ. Code § 1942.4.)

181.    Beginning no later than 2023 and continuing through at least November 2025, Redwood breached its duties by allowing and failing to timely correct dangerous and substandard conditions at the premises, including but not limited to: severe cockroach

---

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

infestations and pest activity within Plaintiffs' unit; trash overflow and refuse accumulation; broken or unsecured security gates; blocked fire lanes and unsafe common-area conditions; repeated water shutoffs impacting sanitation and basic habitability; and related health and safety hazards rendering the premises substandard.

182.    Redwood had actual notice of these conditions through repeated complaints, recurring treatment notices and entries, and Plaintiffs' written communications, including written demands on March 10, 2025 as well as March 24, 2025 requesting remediation of uninhabitable conditions and corrective action. Despite notice and opportunity to cure, Redwood failed to permanently remediate the hazards within a reasonable time.

183.    As a direct result of Redwood's continued failure to correct these conditions and furnish requested tenancy/accounting records, Plaintiffs were forced to pursue lawful habitability remedies, including lawful rent withholding beginning in April 2025, because the premises remained substandard and unsafe as alleged herein.

184.    On or about March 20, 2025, after Redwood's maintenance worker attempted to address the heater, a carbon-monoxide alarm activated. Plaintiff Dartez became severely ill and vomited, and Plaintiff Latimore passed out. This incident constituted an acute health and safety emergency and confirming the dangerous condition of the premises and Redwood's failure to maintain safe systems and habitability.

185.    Redwood's breaches were a substantial factor in causing Plaintiffs harm. Plaintiffs suffered physical illness and health impacts, including the March 20, 2025 incident, with ongoing symptoms and disability-related exacerbation from continued exposure to substandard conditions and unsafe housing instability, as alleged herein.

186.    Redwood's negligence also foreseeably contributed to Plaintiffs' housing

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

instability and resulting damages by maintaining the premises in a persistently substandard condition and failing to correct hazards despite notice, which forced Plaintiffs to pursue statutory habitability remedies and seek relief through an administrative process while Redwood escalated enforcement pressure rather than curing underlying dangers and conditions.

187.    Redwood is liable for negligence per se because it violated statutes enacted to protect residential tenants and occupants from the type of harm Plaintiffs suffered, including Civil Code § 1941.1 and Health & Safety Code § 17920.3. Plaintiffs are within the class of persons those statutes were designed to protect, and the statutory violations were a substantial factor in causing Plaintiffs' injuries and damages. These statutes are specifically intended to prevent unsafe and substandard residential conditions—exactly the hazards and resulting physical illness, disability-related exacerbation, and housing instability alleged herein. As a direct and proximate result of Redwood's acts and omissions, Plaintiffs suffered damages according to proof, including physical illness, disability-related harm, emotional distress, economic loss, displacement-related expenses, and other harms alleged herein. Plaintiffs are entitled to recover all damages according to proof, including general damages, special damages, consequential damages, and all further relief permitted by law.

188.    As a direct and proximate result of Redwood's acts and omissions, Plaintiffs suffered damages according to proof, including physical illness, disability-related harm, emotional distress, economic loss, displacement-related expenses, and other harms alleged herein. Plaintiffs are entitled to recover all damages according to proof, including general damages, special damages, consequential damages, and all further relief permitted by law.

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

42 OF 62

## TENTH CAUSE OF ACTION

**Conversion / Trespass to Chattels**
(Civ. Code §§ 1980–1991; Civ. Code § 3336; Civ. Code § 3281)

**Against Defendants Redwood Property Investors III, LLC and DOES 1–50**

189.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 167, inclusive, as though fully set forth herein.

190.    Plaintiffs owned and had the right to possess personal property located in the unit, including but not limited to household goods, furniture, appliances, electronics, tools, documents, and essential disability-related and daily living necessities.

191.    Plaintiffs were displaced and deprived of access to the unit through lockout/possession enforcement activity occurring on or about November 7–10, 2025, with additional lockout/restoration activity on or about December 10, 2025. Plaintiffs last observed their personal property inside the unit on or about November 29, 2025, as alleged herein.

192.    On or about January 5, 2026, Plaintiffs returned to the unit and observed that their personal property had been removed in full. Plaintiffs contacted the Contra Costa Sheriff's Department that day and were advised that the unit had been restored on or about December 10, 2025, and that Plaintiffs were supposed to be provided a period of time to retrieve their belongings before final removal and disposition.

193.    Thereafter, Redwood wrongfully took, removed, destroyed, disposed of, and/or exercised dominion and control over Plaintiffs' personal property without Plaintiffs' consent and without providing lawful notice, storage, and release procedures required for tenant personal property under Civil Code §§ 1980–1991, including written notice and a meaningful opportunity to reclaim property after possession was restored and while Redwood had exclusive control of the premises and Plaintiffs' remaining belongings. Redwood did not provide Plaintiffs any

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

written notice identifying the property, advising how and where to reclaim it, or providing a lawful time window to retrieve it before disposal, as required by Civil Code §§ 1980–1991.

194.    Redwood's wrongful control and disposition of Plaintiffs' property constituted conversion and/or trespass to chattels because Redwood intentionally interfered with Plaintiffs' property rights by depriving them of possession, access and use, and by failing to return the property upon demand thereby failing to account for where the property was taken, stored, sold, destroyed, or discarded. Plaintiffs demanded access and return of the property on or about January 5, 2026, Redwood failed and refused to return it.

195.    Redwood's conduct caused foreseeable and substantial harm, including the loss of irreplaceable personal items, inability to access essential belongings and disability-related necessities, and additional out-of-pocket losses associated with displacement, replacement, transportation, and storage needs, as alleged herein.

196.    Plaintiffs are entitled to recover the value of the property at the time of conversion, plus interest and consequential damages according to proof under Civil Code § 3336, and are entitled to recover damages under Civil Code § 3281, together with such further relief as permitted by law.

197.    Plaintiffs further allege that Redwood's conduct was willful, malicious, and oppressive, therefore Plaintiffs seek punitive damages where authorized.

**ELEVENTH CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress (IIED)**
(Civ. Code § 1708.4; Civ. Code § 3294)

**Against Defendants Redwood Property Investors III, LLC and DOES 1–50**

198.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 176, inclusive, as though fully set forth herein.

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

44 OF 62

199. Redwood knew Plaintiffs were long-term residential tenants and had actual knowledge that Plaintiff Latimore was permanently disabled and uniquely vulnerable to severe harm from unsafe housing conditions, coercive eviction pressure, and loss of shelter.

200. Redwood engaged in extreme and outrageous conduct, as part of a continuing course of conduct, by knowingly maintaining and allowing persistent substandard and hazardous conditions affecting health and safety while escalating eviction threats and enforcement pressure instead of curing the hazards, including refusing to permanently remediate severe pest infestation and related habitability failures after written demands dated March 10, 2025 and March 24, 2025.

201. After Plaintiffs invoked statutory habitability protections and began lawful rent withholding in April 2025, Redwood escalated retaliation and harassment through coercive notices and eviction filings, including a 3-day notice to pay rent or quit dated April 7, 2025, a further 3-day notice dated May 6, 2025, an unlawful detainer filed May 21, 2025 (dismissed July 17, 2025), a 3-day notice dated July 21, 2025 targeting Plaintiff Latimore as an "unauthorized occupant" and demanding her removal despite her known disability and established residency, then an unlawful detainer filed on or about July 28, 2025 naming Plaintiff Latimore and demanding she "cure or quit."

202. Redwood's conduct was intentional, willful, and carried out with reckless disregard of the high probability of causing severe emotional distress because Redwood and its agents understood that escalating retaliatory eviction pressure against a household including a permanently disabled tenant—while refusing to cure known health and safety hazards—would foreseeably cause extreme emotional suffering and would predictably culminate in displacement and homelessness.

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

203.   Redwood's conduct was extreme and outrageous because it weaponized housing insecurity and the eviction process against Plaintiffs during Plaintiffs' protected habitability activity and while Redwood remained on notice of disability-related vulnerability and ongoing dangerous conditions, exceeding all bounds of decency tolerated in a civilized community.

204.   As a direct and proximate result of Redwood's extreme and outrageous conduct, Plaintiffs were displaced from their home and forced into homelessness beginning on or about November 7–10, 2025, and Plaintiffs' homelessness has continued thereafter.

205.   As a further direct and proximate result, Plaintiffs suffered severe emotional distress, including fear, panic, humiliation, loss of safety and dignity, anxiety, sleep disruption, and disability-related exacerbation, together with related economic and non-economic harms, as alleged herein.

206.   Plaintiffs are entitled to recover compensatory damages according to proof. Plaintiffs further seek punitive damages where authorized under Civil Code § 3294 based on Redwood's malicious, oppressive, and/or fraudulent conduct.

## TWELFTH CAUSE OF ACTION

**Invasion of Privacy / Quiet Enjoyment / Unlawful Entry / Intrusion**
(Civ. Code §§ 1927, 1954; Civ. Code § 1708.8)

**Against Defendants Redwood Property Investors III, LLC and DOES 1–50**

207.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 185, inclusive, as though fully set forth herein.

208.   Plaintiffs had a right to quiet enjoyment, privacy, and lawful possession of their residence, including the right to be free from harassment, intimidation, excessive disturbance, and unlawful or abusive entries, and the right to receive legally compliant notice of entry limited to lawful purposes and conducted reasonably. (Civ. Code §§ 1927, 1954.)

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

209. Redwood substantially and unreasonably interfered with Plaintiffs' quiet enjoyment and privacy through a continuing course of harassment, intimidation, noise disturbance, and entry-related misconduct carried out by Redwood's employees, agents, and vendors, including conduct occurring inside, immediately adjacent to, and directly surrounding Plaintiffs' unit, leaving Plaintiffs with no reasonable ability to escape the disturbance and intrusion. (Civ. Code § 1927.)

210. Redwood's employee, who resided directly below Plaintiffs in Unit 103, repeatedly created severe and targeted disturbances at unreasonable hours, including turning on loud machinery and tools at irregular times, including chainsaw-like equipment and other mechanical devices, and creating ongoing noise and vibration impacts that substantially disrupted Plaintiffs' ability to rest, function, and safely occupy the unit. Plaintiffs further allege that this employee and members of his household intentionally banged on ceilings and engaged in antagonizing conduct directed at Plaintiffs, despite Plaintiffs having no personal conflict with Redwood staff and having engaged solely in protected tenant activity and habitability complaints.

211. In addition to the disturbances emanating from below, Redwood repeatedly failed to provide adequate notice regarding construction and roof-related work occurring on and above Plaintiffs' unit, including loud and disruptive activity that created pervasive interference throughout the day and at unpredictable times. Redwood's lack of advance notice and failure to manage and contain these disturbances materially interfered with Plaintiffs' quiet enjoyment and ability to safely remain in the unit, particularly given Plaintiff Latimore's disability-related vulnerability.

212. On or about April 10, 2025, Redwood, through multiple management agents and

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

47 OF 62

personnel, conducted a mass "inspection" of Plaintiffs' unit pursuant to an entry notice that lacked clear identification and signature and was used in a coercive and retaliatory manner rather than for a legitimate, narrowly tailored purpose. Redwood's agents entered and/or attempted to enter Plaintiffs' home in an intimidating manner and without compliance with the strict statutory limitations of Civil Code § 1954, including that entry be for lawful purposes and conducted reasonably.

213.    On or about July 25, 2025, Redwood provided a key to Plaintiffs' unit to a Clark Pest Control representative named Sean, without proper advance notice to Plaintiffs. Redwood did not provide Plaintiffs a reasonable advance notice identifying the date, time window, purpose, and identity of the entrant prior to the key-enabled entry attempt. Sean from Clark Pest used the key to unlock and open Plaintiffs' exterior metal door, then repeatedly banged on Plaintiffs' interior wooden door which was locked from the inside and had no key access, creating a disturbing and alarming intrusion and fear of unauthorized entry. Plaintiffs possess video documentation of this incident. Redwood's conduct in providing key access and permitting vendor entry attempts without proper notice and coordination violated Plaintiffs' privacy and exceeded the lawful scope and procedures required for entry under Civil Code § 1954.

214.    Redwood's conduct constituted an actionable invasion of privacy and intrusion into Plaintiffs' private residence because it involved improper and offensive physical invasion, coercive entry practices, and intimidation within Plaintiffs' home environment, and a pattern of unwanted and harassing intrusion into Plaintiffs' solitude and seclusion within the meaning of Civil Code § 1708.8, as applicable.

215.    Redwood's harassment, disturbances, intimidation tactics, and unlawful entry

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

related practices were a substantial factor in causing serious and escalating harm, including fear, panic, anxiety, humiliation, loss of peace and safety in the home, sleep deprivation, and disability-related exacerbation, as well as deterioration of Plaintiffs' ability to remain in the unit without ongoing distress.

216. As a direct and proximate result of Redwood's violations of Civil Code §§ 1927 and 1954 and its intrusive conduct affecting Plaintiffs' residential privacy, Plaintiffs suffered damages according to proof, including emotional distress, disability-related harm, and related economic and non-economic losses.

217. Plaintiffs are entitled to recover compensatory damages according to proof and seek punitive damages where authorized based on Redwood's malicious, oppressive, and/or fraudulent conduct.

## THIRTEENTH CAUSE OF ACTION

### Declaratory and Injunctive Relief
(28 U.S.C. §§ 2201–2202; Gov. Code §§ 7922.535, 7923.000, 7923.115; Gov. Code §§ 11135; 42 U.S.C. § 12132; 28 C.F.R. §§ 35.130, 35.160–35.164; Bus. & Prof. Code § 17203)

### Against All Defendants

218. Plaintiffs reallege and incorporate by reference paragraphs 1 through 196, inclusive, as though fully set forth herein.

219. An actual, present, and justiciable controversy exists between Plaintiffs and Defendants concerning Plaintiffs' rights and Defendants' ongoing legal obligations arising from the facts alleged herein, including Defendants' continuing withholding of core records, Defendants' failure to preserve evidence, and Defendants' ongoing refusal to provide Plaintiffs lawful access to mandatory administrative and tenancy-related documentation necessary for meaningful review and relief. (28 U.S.C. §§ 2201–2202.)

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

220. Plaintiffs are entitled to declaratory relief because Defendants' conduct described herein constitutes ongoing violations of statutory and nondiscrimination duties, including but not limited to: (a) the City's duty to provide nondiscriminatory, meaningful access to its Rent Program adjudicatory process under ADA Title II, 42 U.S.C. § 12132, and implementing regulations including 28 C.F.R. §§ 35.130 and 35.160–35.164; (b) the City's duty to provide nondiscriminatory programs and services under Gov. Code § 11135; and (c) the City's mandatory record-production duties under the CPRA, including Gov. Code §§ 7922.535 and 7923.000, with mandatory fees under Gov. Code § 7923.115.

221. Plaintiffs are further entitled to injunctive relief because Defendants have ongoing custody and control of critical evidence and records, including the Rent Program administrative file and any hearing recording(s), tenant-portal records, lease history, rent ledgers, notices, maintenance logs, and communications, and Defendants' continued withholding and failure to preserve those materials continues to cause immediate and irreparable harm by obstructing Plaintiffs' ability to obtain meaningful review, enforce statutory rights, and recover from ongoing homelessness and displacement harms.

222. Plaintiffs seek narrowly tailored declaratory and injunctive relief requiring Defendants to immediately preserve and produce evidence and to comply with nondiscrimination, access, and record-production duties that were denied to Plaintiffs and that remain unfulfilled, including: Preservation / No Deletion / No Alteration. An order requiring Defendants to preserve all documents, records, electronically stored information, and tangible evidence relating to Plaintiffs, including but not limited to leases, tenant ledgers, notices, rent-accounting materials, work orders, maintenance logs, photographs/videos, communications, and

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

50 OF 62

all City Rent Program case materials, and prohibiting deletion, modification, purging, overwriting, or restriction of access.

a) **Third-Party Vendor Preservation.** An order prohibiting Defendants from instructing, requesting, or permitting any third-party vendor, payment processor, software provider, property-management platform, pest-control vendor, storage repository, or other third party to delete, modify, purge, or restrict access to any data covered by the preservation order.

b) **Sworn Compliance Certification.** An order requiring Defendants to provide a sworn declaration under penalty of perjury confirming preservation compliance, identifying custodians, repositories, and retention practices for all preserved evidence, and confirming that no responsive material has been deleted or altered after notice of Plaintiffs' disputes and claims.

c) **Disclosure if Evidence Was Lost or Deleted.** If Defendants contend any category of evidence has been deleted, overwritten, lost, or is otherwise unavailable, an order requiring Defendants to disclose that fact in the sworn declaration, identify the date range affected, the manner of loss, the custodian(s) involved, and all steps taken to recover the data.

d) **Immediate Production of Rent Program Record / Hearing Recording(s).** As to the City, an order compelling production of the complete Rent Program administrative record and any hearing recording(s), including all evidence submissions, exhibits, communications, internal determinations, and decision materials, within fourteen (14) days, together with a sworn

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

certification of completeness. (Gov. Code §§ 7922.535, 7923.000, 7923.115; 42 U.S.C. § 12132; 28 C.F.R. §§ 35.160–35.164.)

e) **ADA Title II Access Compliance.** As to the City, an order requiring implementation of ADA Title II compliant effective communication, reasonable modification, and nondiscriminatory evidence-intake procedures for Rent Program matters, including acceptance and consideration of disability documentation and written accommodation requests, consistent with 42 U.S.C. § 12132 and 28 C.F.R. §§ 35.130 and 35.160–35.164.

f) **UCL Injunctive Relief.** As to Redwood, an order enjoining unlawful, unfair, and fraudulent housing-related practices and record concealment and requiring corrective disclosures and Restitutionary accounting as authorized under Bus. & Prof. Code § 17203.

223. Defendants' denial of the above statutory duties and safeguards directly and foreseeably harmed Plaintiffs by foreclosing timely protection and meaningful review during the critical period when Plaintiffs were seeking habitability remediation, disability access, and anti-retaliation protections, resulting in worsening retaliation-related harm, displacement, and ongoing homelessness that continues to negatively impact Plaintiffs' lives to this day.

224. Plaintiffs have no plain, speedy, or adequate remedy at law that can fully protect against the ongoing harm of continued evidence withholding, destruction risk, and denial of meaningful access to mandatory records and nondiscriminatory administrative process, thus Plaintiffs seek injunctive relief to prevent further irreparable harm and to restore lawful access and accountability.

225. Plaintiffs therefore seek declaratory and injunctive relief as set forth herein,

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

together with such other and further relief as the Court deems just and proper.

## FOURTEENTH CAUSE OF ACTION

**Breach of Implied Warranty of Habitability; Unlawful Demand or Collection of Rent**
(Civ. Code §§ 1941.1, 1942, 1942.4; Health & Saf. Code § 17920.3)

**Against Defendant City of Antioch**

226.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 228, inclusive, as though fully set forth herein.

227.    Defendant Redwood owned, controlled, operated, managed, leased, maintained, or otherwise had responsibility for the subject residential premises, including Plaintiffs' dwelling unit plus common areas. Redwood owed Plaintiffs nonwaivable duties to provide, maintain, repair, and keep the premises fit for human habitation. (Civ. Code § 1941.1; Health & Saf. Code § 17920.3.)

228.    From no later than 2023 through at least November–December 2025, the premises suffered substantial habitability failures and substandard conditions, including severe pest infestation, trash overflow, broken or unsecured gates, blocked fire lanes, repeated water shutoffs, environmental hazards, trespasser activity, construction disturbances, unsafe common areas. These conditions constituted "substandard housing" under Health & Saf. Code § 17920.3, plus violations of Civ. Code § 1941.1.

229.    Redwood had actual notice of these conditions through repeated resident reports, pest-treatment scheduling notices, on-site observations, written correspondence, plus certified demands dated March 10, 2025 and March 24, 2025. Redwood had a reasonable opportunity to cure. Redwood failed to permanently remediate the conditions within a reasonable time.

230.    Plaintiffs lawfully invoked tenant remedies due to these conditions, including lawful rent withholding beginning in or about April 2025. (Civ. Code §§ 1942, 1942.4.)

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

231.    Despite the substandard conditions, Redwood demanded rent, served coercive three-day notices, pursued possession pressure, attempted to collect charges as though the premises were habitable, including through eviction-related escalation during the period of uninhabitability. Such conduct constitutes unlawful rent demand or collection during a period in which Redwood was prohibited from doing so. (Civ. Code § 1942.4.)

232.    As a direct and proximate result of Redwood's breaches, Plaintiffs suffered damages according to proof, including physical harm, disability-related exacerbation, emotional distress, economic loss, housing instability, displacement-related losses, litigation prejudice, plus other consequential harms alleged herein.

233.    Plaintiffs seek all relief authorized by law, including actual damages, statutory or special damages provided by Civ. Code § 1942.4, restitution, declaratory relief, injunctive relief as warranted, plus attorneys' fees and costs where authorized.

## FIFTEENTH CAUSE OF ACTION

**Fraud; Fraudulent Concealment of Material Facts and Records**
(Civ. Code § 1710(3); Civ. Code §§ 1962, 1950.5(g))

**Against Defendant City of Antioch**

234.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 236, inclusive, as though fully set forth herein.

235.    Redwood made material representations to Plaintiffs concerning tenancy records, lease history, plus rent-accounting documentation. Redwood also concealed material facts and records within its exclusive custody or control, including lease history predating 2023, rent ledgers, payment history, charge support, maintenance logs, plus other tenancy records necessary to evaluate Plaintiffs' rights, defenses, and financial obligations.

236.    In or about January 2023, after Plaintiff Dartez requested copies of all lease

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

agreements and tenancy records dating back to 2016, Redwood represented in substance that no leases existed prior to 2023, despite Plaintiffs' continuous tenancy since approximately February 2016 as alleged herein. This was a material misrepresentation and concealment. (Civ. Code § 1710(3).)

237. Redwood had duties to provide truthful, non-misleading disclosures in the landlord–tenant relationship, including duties arising from exclusive knowledge of the concealed information, partial representations that were misleading absent full disclosure, plus statutory disclosure and accounting-related duties applicable to housing providers. (Civ. Code § 1962; Civ. Code § 1950.5(g).)

238. Redwood intended to induce Plaintiffs to accept or submit to Redwood's asserted tenancy narrative, to weaken Plaintiffs' ability to assert tenancy protections, to impair defenses to notices or eviction pressure, to deter protected enforcement activity, to obstruct meaningful participation in administrative proceedings, to preserve Redwood's leverage in rent disputes.

239. Plaintiffs reasonably relied on Redwood's concealment and misrepresentations to their detriment, including by proceeding without access to core tenancy records and rent-accounting support, suffering evidentiary prejudice in administrative proceedings, facing escalated enforcement pressure, being deprived of timely protections, plus incurring economic and non-economic harms alleged herein.

240. Redwood's concealment and misrepresentations were a substantial factor in causing Plaintiffs' damages, including loss of housing stability, displacement-related harm, out-of-pocket losses, emotional distress, disability-related injury, litigation prejudice, plus other damages according to proof.

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

241.    Redwood's conduct was willful, oppressive, or carried out with conscious disregard of Plaintiffs' rights. Plaintiffs therefore seek punitive damages where authorized, plus compensatory damages, restitutionary relief, equitable relief, plus such further relief as the Court deems just and proper.

## VI.    **DAMAGES**

242.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 161, inclusive, as though fully set forth herein.

243.    Plaintiffs seek compensatory damages, statutory penalties, restitution, disgorgement, punitive damages (as applicable), declaratory and injunctive relief-related monetary recovery where authorized, and attorneys' fees and costs, as permitted by law, including but not limited to 42 U.S.C. § 3613(c), 42 U.S.C. § 1988(b), Gov. Code § 12989.2, Civ. Code § 52, Civ. Code § 1942.5(f), and Gov. Code § 7923.115.

244.    Plaintiffs' compensatory damages include, without limitation:

   a) Wrongful displacement and homelessness (beginning approximately Nov. 7–10, 2025);

   b) Emergency housing, relocation, shelter, and survival expenses;

   c) Transportation, storage, replacement costs, and continuing instability expenses;

   d) Loss and destruction of personal property, including electronics, furniture, appliances, medical-support items, documents, tools, and household goods;

   e) Vehicle tow and recovery damages, including the $990 paid on January 5, 2026, plus related expenses;

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

f) Medical harms and physical injury impacts, including illness following the March 19-20, 2025 carbon-monoxide alarm/poising incident and prolonged headaches and symptoms thereafter;

g) Disability exacerbation damages and ongoing functional impairment due to unsafe conditions and homelessness;

h) Severe emotional distress damages, including panic episodes, humiliation, sleep disruption, anxiety, elevated blood pressure, and stress-related impairment;

i) Economic harm and loss of opportunity, including inability to work normally, loss of stability, and interference with life and family planning;

j) Loss of access to evidence and records, including portal termination on December, 30, 2025 and withheld administrative records, causing litigation prejudice.

245. Plaintiffs further seek statutory damages and civil penalties, including but not limited to:

a) Civ. Code § 1942.5(f) statutory retaliation penalties per retaliatory act;

b) Unruh Act statutory damages (Civ. Code § 52);

c) FHA/FEHA compensatory and statutory remedies as authorized (42 U.S.C. § 3613(c); Gov. Code § 12955 et seq.).

246. Plaintiffs seek rent restitution and statutory remedies for unlawful rent collection, including rent demanded and/or collected during periods of uninhabitability prohibited by Civil Code § 1942.4, including treble damages where authorized.

247. Plaintiffs seek punitive damages against private Defendants for malicious,

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

oppressive, and fraudulent conduct, as authorized by law.

248. Plaintiffs seek CPRA attorneys' fees and litigation costs, alleging entitlement to recover mandatory attorneys' fees and costs as prevailing requesters under Government Code §§ 7923.000 et seq., including Gov. Code § 7923.115, based on the City's unlawful nonproduction and ongoing withholding.

249. Plaintiffs seek attorneys' fees and costs under applicable fee-shifting statutes, including 42 U.S.C. § 1988(b), 42 U.S.C. § 3613(c), Gov. Code § 12989.2, Civ. Code § 52, and other applicable provisions.

250. Plaintiffs plead damages in the alternative where required and request that the Court allocate or structure any overlapping categories to avoid duplication while ensuring maximum lawful recovery.

## VII. RESERVATION OF RIGHTS / NO WAIVER / DOUBLE RECOVERY

251. **No Waiver.** Nothing in this Complaint, including the selection or omission of particular allegations or claims, shall be construed as a waiver, relinquishment, or forfeiture of any right, claim, remedy, damage category, penalty, or form of relief available to Plaintiffs under federal, state, or local law. Plaintiffs expressly preserve all rights and remedies.

252. **Reservation as to Unknown or Later-Discovered Facts.** Plaintiffs further reserve the right to amend and/or supplement this Complaint based on discovery, later-produced records, withheld or newly identified evidence, identification of DOE defendants, and/or continuing or post-filing conduct, including without limitation record concealment, spoliation-related issues, and any additional acts of retaliation, discrimination, interference, or wrongful deprivation.

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

58 OF 62

253.    **No Election of Remedies; Related Proceedings Not a Waiver.** Plaintiffs' pursuit of any related administrative, mandamus, or other judicial proceeding arising from the same housing events is not an election of remedies and is undertaken to secure distinct and/or complementary relief, including equitable and record-production relief, while this action seeks damages and statutory remedies authorized by law.

254.    **No Double Recovery / Allocation.** Plaintiffs do not seek duplicative recovery for the same injury. To the extent any remedy or damage theory overlaps in part, the Court may allocate, offset, or structure relief as required to prevent duplication while preserving Plaintiffs' maximum lawful recovery under alternative and independent theories.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for judgment against Defendants, and each of them, as follows:

1) **Declaratory Relief.** For a declaration that Defendants' acts and omissions violated Plaintiffs' rights under applicable federal, state, and local law, including the Fair Housing Act, ADA Title II, 42 U.S.C. § 1983 and the Fourteenth Amendment, FEHA, the Unruh Civil Rights Act, California habitability and anti-retaliation statutes, the CPRA, and Antioch Municipal Code Title 11.

2) **Injunctive Relief (Including Preservation and Production).** For preliminary and permanent injunctive relief, as warranted, including orders:

   a) Enjoining further retaliation, coercion, intimidation, harassment, discrimination, and interference with Plaintiffs' protected housing and civil rights;

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

b) Requiring immediate preservation, production, and audit of all records and electronically stored information relevant to Plaintiffs' claims, including: leases, ledgers, notices, communications, tenant-portal data, work orders/maintenance logs, photographs/videos, and administrative records;

c) As to the City, compelling production of the complete Rent Program administrative record and any hearing recording(s) within fourteen (14) days, together with a sworn compliance certification under penalty of perjury and a preservation order covering all related materials; and

d) Prohibiting destruction, alteration, concealment, or further failure to preserve evidence.

3) **Compensatory Damages.** For all compensatory damages according to proof, including but not limited to wrongful displacement, homelessness-related harms, property losses, medical impacts, emotional distress, disability exacerbation, and economic losses.

4) **Statutory Damages and Civil Penalties.** For all statutory damages, penalties, and civil remedies authorized by law, including retaliation penalties, Unruh Act statutory damages, and all additional statutory remedies available under the FHA, FEHA, ADA Title II, and related authorities.

5) **Punitive Damages (As to Private Actors).** For punitive and exemplary damages against the private-actor Defendants, as authorized by law, based on malicious, oppressive, and/or fraudulent conduct.

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

6) **Restitution and Disgorgement.** For restitution, disgorgement, and all equitable monetary relief authorized by law to restore Plaintiffs to the position they would have occupied absent Defendants' misconduct and to prevent unjust enrichment.

7) **Attorneys' Fees and Costs.** For reasonable attorneys' fees, litigation expenses, and costs as authorized by applicable fee-shifting statutes, including but not limited to 42 U.S.C. § 1988(b), 42 U.S.C. § 3613(c)(2), Gov. Code § 12989.2, Civ. Code § 52, and Gov. Code § 7923.115, and any other applicable provisions.

8) **Interest.** For pre-judgment and post-judgment interest at the maximum rate permitted by law.

9) **No Double Recovery / Allocation.** For allocation, offset, or structuring of any award as necessary to avoid double recovery for the same injury, while preserving Plaintiffs' maximum lawful recovery under overlapping theories pled in the alternative.

10) **Such Other and Further Relief.** For such other and further legal and equitable relief as the Court deems just and proper.

11) **Mandatory CPRA Fee Relief.** For an order awarding mandatory attorneys' fees and costs as prevailing requesters pursuant to Gov. Code § 7923.115.

12) **Disability Access Compliance.** For injunctive relief requiring ADA Title II compliant effective communication and process accommodations necessary to ensure equal access to City Rent Program services and proceedings.

13) **Enforcement Jurisdiction.** For an order retaining jurisdiction as needed to enforce declaratory and injunctive relief, preservation obligations, and compliance directives.

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS

**14) Treble or Maximum Relief Allowed.** An award of treble, multiplied, or enhanced damages, restitution, and/or statutory penalties to the maximum extent permitted by law, as proven.

## IX.    JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38.

Respectfully submitted,

**DATED:** February 25, 2026          By: _____

**Gary Dartez, Plaintiff in Pro Per**
20 E 16th Street, Unit #203
Antioch, CA 94509
Email: Gary.Dartez.Email@gmail.com

By: _____

**Tamisha Latimore, Plaintiff in Pro Per**
20 E 16th Street, Unit #203
Antioch, CA 94509
Email: Tamisha.Latimore@gmail.com

COMPLAINT FOR FEDERAL AND STATE CIVIL RIGHTS VIOLATIONS, DISABILITY DISCRIMINATION, RETALIATION, AND RELATED TORT CLAIMS